*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0280**

State of Minnesota,
Respondent,

vs.

Landon Darrick Robinson,
Appellant.

**Filed February 1, 2016
Affirmed
Connolly, Judge**

Ramsey County District Court
File No. 62-CR-14-4743

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and

Klaphake, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

Appellant challenges his conviction of being an ineligible person in possession of a firearm, arguing that the circumstantial evidence was insufficient to prove that he actually possessed the firearm. Because the circumstances proved are consistent with appellant's guilt and inconsistent with any other rational hypothesis, we affirm.

**FACTS**

On June 25, 2014, two police officers were patrolling downtown St. Paul in a vehicle. Around 9:30 p.m., they saw appellant Landon Robinson run into an intersection, collide with a car, stumble backwards, and continue running. He did not stop when the officers activated their lights. The officers followed him; when they caught up with him, the first officer got out. Appellant was partially visible in an alcove behind a bus shelter. The first officer ordered appellant to come out and show his hands. As appellant stood up, the first officer heard the sound of metal hitting metal.

The first officer told appellant to "Come here," but appellant ran away, back in the direction of the place where the officers had first seen him. The first officer pursued appellant on foot and overtook him about 50 feet from the alcove. Appellant then stopped and, at the first officer's direction, lay down on the ground. The second officer arrived and handcuffed appellant. The first officer told the second officer that he had heard a noise when appellant stood up in the alcove and that appellant had dropped something. Appellant reacted emotionally to this, crying out, "I didn't have anything." The second officer asked appellant if he had a gun; appellant said he did not.

The first officer returned to the alcove and discovered a handgun wrapped in plastic with a pair of earbuds draped over it. These items were subsequently tested for DNA. The grip of the gun had a partial DNA male profile that did not match appellant; other parts of the gun either were not tested or had no DNA information. The earbuds had a mixture of at least three DNA profiles; 95.4% of the population could be excluded from those profiles, but appellant was in the 4.6% that could not be excluded.

Following a jury trial, appellant was convicted of possession of a firearm by an ineligible person and sentenced to the presumptive 60 months in prison. He challenges his conviction, arguing that the circumstantial evidence was not sufficient.[1]

## D E C I S I O N

### 1. Circumstantial Evidence

> Under the circumstantial-evidence standard, we apply a two-step analysis. The first step is to identify the circumstances proved. In identifying the circumstances proved, we defer to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State. As with direct evidence, we construe conflicting evidence in the light most favorable to the verdict and assume that the jury believed the State's witnesses and disbelieved the defense witnesses.

---

[1] In a pro se brief, appellant also argues that (1) he was denied due process because one juror, an immigrant, indicated that she could become upset if children and women were involved in incidents with guns and (2) the officers lacked probable cause to arrest appellant. Because neither issue was raised to the district court, neither is properly before us. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). In any event, neither issue has merit. The juror said she could be fair to both parties in a case in which the state claimed the defendant possessed a gun and the trial included no reference to children or women in connection with the use of a gun. The first officer who had heard metal hit metal when appellant was asked to come out and show his hands had probable cause to suspect a gun would be found there and, having found the gun, had probable cause to arrest appellant.

3

Stated differently, in determining the circumstances proved, we consider only those circumstances that are consistent with the verdict. This is because the jury is in the best position to evaluate the credibility of the evidence even in cases based on circumstantial evidence.

The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt. We review the circumstantial evidence not as isolated facts, but as a whole. We examine independently the reasonableness of all inferences that might be drawn from the circumstances proved[,] including the inferences consistent with a hypothesis other than guilt. Under this second step, we must determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt, not simply whether the inferences that point to guilt are reasonable. We give no deference to the fact finder's choice between reasonable inferences.

*State v. Silvernail*, 831 N.W.2d 594, 598-99 (Minn. 2013) (quotations and citations omitted).

Appellant was asked about the night in question: "[A]t any point, were you in possession of a firearm?" He answered, "Not at all." Appellant was shown a picture of the alcove and asked, "Were you back in this area, []?" to which he answered "No." He again answered "No" when asked "You weren't there?" The first officer was asked, "You saw [appellant] tucked in there, [i.e., the alcove]?" and answered "Yeah. I could see about half his body." The second officer was asked about the handcuffing of appellant; he said "[Appellant] was kind of hysterical, when [the first officer] said, 'He dropped something. I'm going back there,' [appellant] was yelling, 'I didn't have anything.'" Neither officer had asked appellant if he had anything.

Appellant does not dispute that the circumstances the officers described, and the jury believed, are consistent with his guilt, but he argues that those circumstances are also consistent with the hypothesis that he did not possess a gun on the night in question. But this would require assuming that (1) some unidentified person who, like appellant, belongs to the 4.6% of the population with a particular DNA profile, had left a gun and a pair of earbuds in an alcove where people do not normally go on the same night that appellant went into the alcove and (2) no one using the adjoining bus stop had taken or reported the gun between the time it was left and the time appellant was apprehended in the alcove. Particularly in light of the fact that appellant was in the 4.6% of the population whose DNA matched the DNA found in the earbuds lying on the gun, it is not reasonable to infer that appellant did not possess the gun found in the generally unoccupied place where he was apprehended while fleeing from the police.

**Affirmed.**